**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------- x
                                                        :
In re:                                                  :  Chapter 11
                                                        :
VIRGIN ORBIT, LLC,[1]                                   :  Case No. 23-10408 (KBO)
                                                        :
              Debtor.                                   :  <u>Hearing Date</u>:
                                                        :  **February 7, 2024 at 9:30 a.m. (ET)**
                                                        :
                                                        :  **Ref. Docket Nos. 17, 19 & 25**
                                                        :
------------------------------------------------------- x

**DEBTORS' RESPONSE TO OBJECTION OF TAMAS HAMPEL TO THE ORDER**
**CONFIRMING THE FIFTH AMENDED JOINT CHAPTER 11 PLAN OF**
<u>**VIRGIN ORBIT HOLDINGS, INC. AND ITS DEBTOR AFFILIATES**</u>

The post-effective date debtor in the above-captioned chapter 11 case and its affiliated post-

effective date debtors (collectively, the "**Debtors**") hereby file this response (this "**Response**") to

the *Notice of Objection to the Order Confirming the Fifth Amended Joint Chapter 11 Plan of*

*Virgin Orbit Holdings, Inc. and Its Debtor Affiliates, Order Signed on 7/31/2023, Ref. Doc. No.*

*604* [Docket No. 17] (the "**Initial Objection**"), the *Supplemental Declaration in Support of the*

*Objection of Tamas Hampel [Docket No. 17] to the Order Confirming the Fifth Amended Joint*

*Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates, Order Signed on*

*7/31/2023, Ref. Doc. No. 604* [Docket No. 19] (the "**Hampel Declaration**"), and the *Supplemental*

*Declaration in Support of the Objection of Tamas Hampel [Docket No. 17, 19] to the Order*

*Confirming the Fifth Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor*

---

[1]   The debtor in this case, along with the last four digits of the debtor's federal tax identification number, is:  Virgin Orbit, LLC (9648).  The debtor's mailing address for purposes of this case is 251 Little Falls Drive, Wilmington, DE 19808.  The chapter 11 cases of the debtor's affiliates, Virgin Orbit National Systems, LLC (3801); Vieco USA, Inc. (0492); Virgin Orbit Holdings, Inc. (6914); and JACM Holdings, Inc. (1445), were closed as of December 1, 2023.  All motions and contested matters that remained open as of the closing of such cases, or that are opened after the date thereof, are administered in the remaining chapter 11 case of Virgin Orbit, LLC.

*Affiliates, Order Signed on 7/31/2023, Ref. Doc. No. 604* [Docket No. 25] (the "**Supplemental Hampel Declaration**" and together with the Initial Objection and the Hampel Declaration, the "**Motion**") filed by Tamas Hampel (the "**Movant**").   For the reasons discussed below, the Court should deny the Motion.  In support of this Response, the Debtors rely upon the declaration of Brian Whittman, attached hereto as **Exhibit A** (the "**Whittman Declaration**"), and respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.     Only in extraordinary circumstances—not present here—should a court disturb a confirmed chapter 11 plan.  Movant is entitled to relief only if Movant can establish that the Debtors perpetrated a fraud on the Court, which requires the Movant to plead, with specificity, that a debtor made materially false or misleading statements during the confirmation process, and such statements induced the court to enter the confirmation order.  *See* 11 U.S.C. § 1144; *In re Melinta Therapeutics, Inc.*, 623 B.R. 257, 263 (Bankr. D. Del. 2020) (noting the standard for establishing fraud under section 1144 of the Bankruptcy Code).

2.     Movant has not made—and cannot make—such a showing.  Rather than allege fraud on the Court, of which there is no evidence, Movant requests that the order approving the Debtors' chapter 11 plan [Docket No. 604] (the "**Confirmation Order**") be revoked because, among other things, (a) the Debtors filed a routine motion to extend certain case deadlines, and (b) certain of the Debtors' assets were allegedly undervalued.  Movant's unsubstantiated assertions are irrelevant to establishing fraud on the Court and amount to untimely sale and confirmation objections.  Therefore, Movant fails to establish the requisite standard for revocation of the Confirmation Order, and the Motion should be denied.

## BACKGROUND

3.     The Debtors filed their chapter 11 cases (collectively, the "**Chapter 11 Cases**") to sell all of their assets pursuant to a court-supervised sale process, either as a going concern or on a piecemeal basis. *See, e.g., Declaration of Daniel M. Hart in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 12] (the "**Hart First Day Declaration**") at 4, 6, 18, & 21; *Declaration of Brian Whittman in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 14] (together with the Hart First Day Declaration, the "**First Day Declarations**") at 20–22, 24; and *Debtors' Motion for Entry of (I) an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (D) Granting Related Relief; and (II) an Order (A) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement, (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* [Docket No. 75] (the "**Sale Motion**").[2]  Upon filing the Chapter 11 Cases, the Debtors informed interested parties that due to the Debtors' rapidly deteriorating liquidity, the Debtors had begun, prior to filing the Chapter 11 Cases, winding down their operations, including eliminating all but only a core group of employees and ceasing all operations other than those necessary to maintain the integrity of the Debtors' assets. *See* Hart First Day Declaration at 20; Whittman Declaration at 2–3.

---

[2]     Additional factual background regarding the Debtors, including their business operations, their capital and debt structures, and the circumstances leading to the commencement of the Chapter 11 Cases, is set forth in detail in the First Day Declarations.

31179507.2

4.    The Debtors' Court-supervised sale process ultimately yielded a total of approximately $39.5 million in cash, pursuant to asset purchase agreements with five non-insider purchasers, which were all negotiated at arms' length by sophisticated parties represented by counsel. *See* Docket Nos. 364, 365, 378, 379, 465, & 481.  Such asset purchase agreements were presented to the Court and approved, after a hearing and upon notice to interested parties. *See* Docket Nos. 75, 204, 245, 249, 274, 279, 326, 334, 336, 339, 344, 347, 353, 360, 362, 364, 365, 366, 378, 379, 453, 456, & 481.  Pursuant to these five transactions, the Debtors sold substantially all of the Debtors' non-intellectual property assets and a portion of the Debtors' intellectual property assets.  Despite the Debtors' best efforts, including extensive prepetition and postpetition marketing processes, the Debtors were unable to identify a buyer who was willing to purchase the Debtors' assets as a going concern. *See* Whittman Declaration at 3.  In addition, the Debtors were unable to identify any potential purchasers that were willing to purchase the Debtors' remaining intellectual property for more than de minimis value. *Id*.

5.    Having sold substantially all of their assets in a public and Court-supervised process after comprehensive marketing and sale processes that were managed by sophisticated professionals, the Debtors filed a chapter 11 plan [Docket Nos. 96, 439 & 604-1] (as amended, modified, and supplemented, the "**Plan**")[3] and disclosure statement [Docket Nos. 97, 440 & 465] (the "**Disclosure Statement**") that described in detail the liquidation value of the Debtors' assets, the proposed treatment of all Claims and Interests under the Plan, the cancellation of Interests in the Debtors, and the Debtors' proposal to wind up their businesses and affairs.  Ultimately, the proceeds from the sales of the Debtors' assets were insufficient to satisfy the Debtors' substantial secured debt obligations. *See* Disclosure Statement at 11.  Therefore, consistent with sections

---

[3]    Capitalized terms used but not defined herein shall have the meaning given to them in the Plan.

1129(b)(2) and 1126(g) of the Bankruptcy Code, Holders of Interests in the Debtors were not entitled to receive any distributions under the Plan, and were therefore deemed to reject the Plan. *See* 11 U.S.C. § 1129(b)(2) (requiring that creditors be paid in full before equityholders are entitled to receive or retain property under a plan) and 11 U.S.C. § 1126(g) (providing that a class of claims or interests that does not receive or retain property under a plan is deemed to reject such plan).

6.     Only three Classes of Claims (Prepetition Secured Notes Claims, General Unsecured Claims, and Convenience Claims) were impaired and entitled to receive or retain property under the Plan, and were therefore entitled to vote on the Plan.  Plan at 23.  The Debtors received votes from Holders of Claims in Class 4 (General Unsecured Claims) and Class 5 (Convenience Claims), and those Classes of Claims overwhelmingly voted to accept the Plan.  *See* Docket No. 572.

7.     As evidenced by Movant's references to the record in the Motion, Movant had access to, and reviewed, the pleadings filed in the Chapter 11 Cases, but did not object to the sale of the Debtors' assets, the adequacy of the Debtors' disclosure statement, or entry of the Confirmation Order.  *See* Initial Objection at 1–2 (referencing, and quoting from, pleadings in the Chapter 11 Cases) and Hampel Declaration at 1 (same).  As a Holder of Interests, Movant was not entitled to vote on the Plan because Movant was deemed to have rejected the Plan.  *See* 11 U.S.C. §1126(g); Disclosure Statement at 7.

8.     On July 28, 2023, the Court held a hearing to consider confirmation of the Plan. After providing parties in interest an opportunity to be heard, the Court enter the Confirmation Order.  *See* Docket Nos. 466 & 604.  Under the Plan, Brian Whittman (the "**Plan Administrator**") was appointed as plan administrator to wind up the Debtors' affairs, liquidate certain of the Debtors' remaining assets, reconcile Claims (other than General Unsecured Claims), and make

distributions to certain creditors.  Plan at 31–32; Whittman Declaration at 5.  To date, the Plan

Administrator has liquidated the remainder of the Debtors' assets, filed six (6) omnibus objections

to certain secured, priority, and administrative claims, and all but a handful of the secured, priority,

and administrative claims asserted in the Chapter 11 Cases have been reconciled and paid.  Under

the Plan, a Litigation Trustee was also appointed for the Litigation Trust, and the Litigation Trustee

continues to review and reconcile the General Unsecured Claims and Convenience Claims filed in

the Chapter 11 Cases.  Plan at 32–37.  In accordance with the Plan, all rights to IP Assets have

been transferred to the Prepetition Secured Noteholder or its designee.

9.      On December 27, 2023, approximately five (5) months after entry of the

Confirmation Order, Movant filed the Motion, asserting that the Confirmation Order should be

revoked.  As discussed herein, the Motion should be denied.

**RESPONSE**

I.      **MOVANT CANNOT ESTABLISH FRAUD ON THE COURT PURSUANT TO SECTION 1144 OF THE BANKRUPTCY CODE**

10.      Pursuant to section 1144 of the Bankruptcy Code, a court may revoke a

confirmation order "if and only if such order was procured by fraud" on the court.  11 U.S.C.

§ 1144; *Melinta*, 623 B.R. at 263.  Although the statute does not provide the standard for

establishing fraud, courts have construed the statute to require a showing of actual fraudulent

intent.  *In re Zolner*, 249 B.R. 287, 293 (N.D. Ill. 2000) (citing *In re Longardner,* 855 F.2d 455,

461 (7th Cir. 1988)).

11.      To demonstrate actual fraudulent intent, a movant must establish the following:

(1) that the debtor made a representation regarding compliance with
11 U.S.C. § 1129, which was materially false;

(2) that the representation was either known by the debtor to be false,
or was made without belief in its truth, or was made with reckless
disregard for the truth;

(3) that the representation was made to induce the court to rely upon it;

(4) that the court did rely upon it; and

(5) that as a consequence of such reliance, the court entered the confirmation order.

*Melinta*, 623 B.R. at 263–64 (citing *In re Tenn-Fla Partners*, 170 B.R. 946, 967 (Bankr. W.D. Tenn. 1994)). To prevail, a movant must specifically allege the facts showing fraud. *In re Northfield Lab'ys Inc.*, 467 B.R. 582, 588 (Bankr. D. Del. 2010) (citing *In re Longardner*, 855 F.2d at 461–62 ("Without a specific showing of the requisite fraudulent intent, the bankruptcy court had no authority under section 1144 to revoke its confirmation order.")); *see also In re Nyack Autopartstores Holding Co., Inc.*, 98 B.R. 659, 662 (Bankr. S.D.N.Y. 1989) ("A plan proponent's intent to defraud is a specific requisite for revoking a confirmation order."); *see also* Bankruptcy Rule 7009 (adopting rule 9(b) of the Federal Rules of Civil Procedure, requiring that a cause of action for fraud be plead with particularity). In determining whether there is fraud on the court, "[t]he important inquiry is whether the fraud harmed the integrity of the judicial process, not whether the fraud prejudiced a party or caused economic loss." *Official Comm. of Unsecured Creditors v. Michelson*, 141 B.R. 715, 726 (Bankr. E.D. Cal. 1992) (citations omitted).

12. Movant fails to allege—let alone establish—***any*** fraud on the Court. Therefore, the Motion should be denied. *In re Longardner & Assocs., Inc.*, 855 F.2d at 462 ("[W]here . . . the creditor fails to show specific acts involving fraudulent intent, it is not entitled to have a confirmed plan of reorganization revoked under Section 1144."). Specifically, Movant does not allege that the Debtors have made any materially false or misleading misrepresentations to the Court that induced the Court to enter the Confirmation Order. Instead, Movant's primary argument is that holders of Prepetition Secured Notes Claims received "IP Assets" under the Plan that the Movant believes were substantially undervalued; therefore, Movant asserts, the Confirmation Order was

procured by fraud. Motion at 1–2; Supplemental Hampel Declaration at 1 ("In consideration of the Plan, it appears that there has been an inadequate assessment of the essential value of the IP Assets. Consequently, this has led to a disproportionate allocation of assets and rights in relation to Class 3 . . . as compared to the treatment connecting to Class 9"). In addition, Movant argues that the Debtors made misleading statements to stakeholders by (a) disclosing that the Debtors had received indications of interest from parties proposing to continue to operate the Debtors' business as a going concern, and (b) filing a motion [Docket No. 609] (the "**Exclusivity Motion**") to extend the exclusive periods to file and solicit a chapter 11 plan. Supplemental Hampel Declaration at 2. As discussed below, Movant's arguments are unavailing.

13.    *First*, neither the Debtors' sale disclosures nor statements made in the Exclusivity Motion were made in connection with entry of the Confirmation Order or compliance with section 1129 of the Bankruptcy Code and are, therefore, irrelevant to the Court's analysis. *See Michelson*, 141 B.R. at 725 ("the fraud is misrepresentation, or misrepresentation by omission, of material facts in the disclosure and confirmation process"). Even if such disclosures were relevant—which they are not—the Debtors did not convey false or misleading information in connection with their sale disclosures. At all times, the Debtors had been willing to consider bids for a going concern transaction, and informed parties of such. *See* Sale Motion, n. 3 ("The Debtor will also consider proposals to acquire any and all of the Assets through a plan of reorganization. Should any such proposal be received prior to the Bid Deadline that the Debtor, in consultation with the Consultation Parties, concludes is in the best interest of the estate and its stakeholders, then the Debtor reserves the right to postpone the Auction and proceed toward the confirmation of a plan of reorganization."). However, no such bids were received, and the Debtors proceeded to sell their assets to the purchasers who submitted the highest and best bids for the Debtors' assets. *See*

Docket Nos. 334, 360, and 453.  The Debtors clearly and unequivocally informed parties of the results of the auction, filed all of the relevant sale pleadings on the docket, and participated in a public hearing regarding approval of the sale of the Debtors' assets.  At no time did the Debtors indicate that they had obtained bids (as opposed to non-binding indications of interest) to purchase the Debtors' assets as a going concern.   To the contrary, the Debtors filed, and obtained confirmation of, the Plan, which contemplated the winding up of the Debtors and their operations.

14.    *Second*, nothing in the Exclusivity Motion could have been intended to induce the Court to enter the Confirmation Order, nor could the Court have entered the Confirmation Order as a result of statements in the Exclusivity Motion, because the Exclusivity Motion was filed ***after*** the Confirmation Order had been entered.  Even if the filing of the Exclusivity Motion was relevant to the Court's inquiry—which it is not—the Debtors explicitly noted in that motion that, given the prior entry of the Confirmation Order, the Debtors sought the extension out of an abundance of caution only in the "unlikely event" an alternative plan was required.  Exclusivity Motion, ¶ 16. As these statements were not materially false representations, were not made to induce the Court to enter the Confirmation Order, and the Court did not rely on the Exclusivity Motion in entering the Confirmation Order, which are all necessary elements to be established in seeking revocation of the Confirmation Order under section 1144, Movant's arguments cannot prevail.

15.    *Third*, Movant does not—and could not—argue that (a) the Debtors mischaracterized or misstated the treatment of Prepetition Secured Notes Claims in the Plan or in connection with entry of the Confirmation Order, or (b) that the Debtors' statements to the Court, if any, about such treatment or the valuation of IP Assets was materially false.  Accordingly, Movant's arguments regarding the valuation of IP Assets are irrelevant.  Instead, Movant primarily expresses dissatisfaction with the treatment provided to Holders of Claims and Interests under the

Plan.  Initial Objection at 1 ("I regard the Plan as a worst-case scenario").  However, Movant's dissatisfaction with the Plan is not a valid basis to revoke the Confirmation Order, and Movant did not timely object to entry of the Confirmation Order.  In determining whether there is fraud on the court, "[t]he important inquiry is whether the fraud harmed the integrity of the judicial process, not whether the fraud prejudiced a party or caused economic loss."  *Michelson*, 141 B.R. at 726.  Movant's untimely and unsupported assertions cannot now be raised.  *Melinta*, 623 B.R. at 264 (concluding that fraud is the "sole ground for relief available for revocation of an order confirming a plan under chapter 11").

16.    Even if valuation of the Debtors' intellectual property was relevant to the Court's inquiry—which it is not—Movant's conjecture is not supported by the facts and circumstances of the Chapter 11 Cases.  The Debtors ran thorough and comprehensive marketing and sale processes and did not receive any bids for the Debtors' assets as a going concern, despite extensive engagement with numerous parties that initially submitted indications of interest.  In addition, following the conclusion of the auction for the Debtors' assets, the Debtors also received only a few immaterial indications of interest (one of which was styled as a bid for $1,000) related to the Debtors' remaining intellectual property assets, undermining Movant's contention that the Debtors substantially undervalued the IP Assets and eliminating the possibility of a going concern transaction.  Whittman Declaration at 3.  This Court has consistently held in various circumstances that objective evidence from the public market is a more reliable measure of value than the subjective estimates of an expert witness (or, under the circumstances, Movant's unsubstantiated lay opinion).  *See e.g.*, *VFB LLC v. Campbell Soup Co.*, 482 F. 3d 624, 633 (3d Cir. 2007) (noting that a market price is the most reliable measure of a stock's value in the context of determining reasonably equivalent value); *In re SubMicron Sys. Corp.*, 432 F.3d 448, 461 (3d Cir. 2006)

("[T]he market's reaction to a sale best reflects the economic realities of assets' worth."); *In re Samson Res. Corp.*, 2023 WL 4003815, at *25–26 (Bankr. D. Del. June 14, 2023) (noting the general consensus that market values are the most reliable measure of values in the context of a fraudulent transfer analysis); *Melinta*, 623 B.R. at 268–69 (determining that Debtors' representations regarding asset valuations were not materially false where the Debtors included the results of a court-supervised marketing process in a chapter 11 plan).

17.     The facts and circumstances of the Chapter 11 Cases, including the available proceeds from the sale of the Debtors' assets, the lack of any buyers interested in purchasing the Debtors' assets as a going concern, and the Debtors' substantial obligations to senior secured creditors illustrate that the Debtors' go-forward business operations were not viable, the IP Assets were not undervalued, and that such assets could not have been a realistic source of recovery for Holders of Interests.  Accordingly, the Motion lacks any evidentiary support in the record and should be denied.

## II.     <u>THE CONFIRMATION ORDER SHOULD NOT BE DISTURBED</u>

18.     Not only does Movant fail to meet its burden to establish fraud on the Court pursuant to section 1144, which is the only basis to revoke the Confirmation Order, but the facts and circumstances of the Chapter 11 Cases warrant against dismantling the extensively negotiated provisions of the Plan.  As the Debtors informed the Court at the Confirmation Hearing, the Plan is the culmination of an extensively negotiated resolution with the Debtors' major stakeholders, including the holders of Prepetition Secured Notes Claims and the Official Committee of Unsecured Creditors, which provides holders of General Unsecured Claims, who were not otherwise entitled to receive distributions, with a recovery.  Tr. of Confirmation Hr'g at 5 (describing the negotiations with the Debtors' stakeholders to achieve a consensual plan).  In addition, the Classes of Claims that voted on the Plan overwhelmingly voted to support the Plan.

31179507.2

Since entry of the Confirmation Order, the Plan has been substantially consummated, as the Plan Administrator has liquidated all the remaining assets of the Debtors' estates, distributions to all but a handful of Holders of Administrative, Secured, and Priority Claims have been made, the Plan Administrator is winding up the Debtors' affairs, and all rights to IP Assets have been transferred to the Prepetition Secured Noteholder or its designee.  Accordingly, this Court should not disturb the Confirmation Order.

## **<u>CONCLUSION</u>**

19.    For the reasons discussed herein, the Court should deny the relief sought by the Motion.

Dated: January 23, 2024        **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
       Wilmington, Delaware

*/s/ Allison S. Mielke*
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Allison S. Mielke (No. 5934)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  rbrady@ycst.com
       mnestor@ycst.com
       kcoyle@ycst.com
       amielke@ycst.com

*Counsel for Debtors and Debtors in Possession*

## **EXHIBIT A**

**Whittman Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------- x
                                          :
In re:                                    :   Chapter 11
                                          :
VIRGIN ORBIT, LLC,[1]                     :   Case No. 23-10408 (KBO)
                                          :
            Debtor.                       :
                                          :
                                          :
                                          :
                                          :
------------------------------------------------------- x
```

**DECLARATION OF BRIAN WHITTMAN IN SUPPORT OF**
**DEBTORS' RESPONSE TO OBJECTION OF TAMAS HAMPEL TO THE ORDER**
**CONFIRMING THE FIFTH AMENDED JOINT CHAPTER 11 PLAN OF**
**VIRGIN ORBIT HOLDINGS, INC. AND ITS DEBTOR AFFILIATES**

I, Brian Whittman, do hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a Managing Director at Alvarez & Marsal North America, LLC ("**Alvarez &**
**Marsal**"), a limited liability corporation, which has served as financial advisor to Virgin Orbit
Holdings, Inc., a Delaware corporation, and its debtor affiliates (collectively, the "**Debtors**") since
February 26, 2023 and throughout the Debtors' chapter 11 cases (the "**Chapter 11 Cases**").
Pursuant to the chapter 11 plan confirmed in the Chapter 11 Cases [Docket No. 604-1]
(the "**Plan**"),[2] upon the Effective Date, I was appointed as Plan Administrator to administer the
Chapter 11 Cases and wind up the Debtors' business affairs.

---

[1]     The debtor in this case, along with the last four digits of the debtor's federal tax identification number, is:  Virgin
Orbit, LLC (9648).  The debtor's mailing address for purposes of this case is 251 Little Falls Drive, Wilmington,
DE 19808.  The chapter 11 cases of the debtor's affiliates, Virgin Orbit National Systems, LLC (3801); Vieco
USA, Inc. (0492); Virgin Orbit Holdings, Inc. (6914); and JACM Holdings, Inc. (1445), were closed as of
December 1, 2023.  All motions and contested matters that remained open as of the closing of such cases, or that
are opened after the date thereof, are administered in the remaining chapter 11 case of Virgin Orbit, LLC.

[2]     Capitalized terms used but not defined herein shall have the meaning given to them in the Plan or Response, as
applicable.

31179507.2

2.      As a result of my experience with the Debtors, my review of public and non-public documents (including the Debtors' books and records), and my discussions with the Debtors' advisors and former employees and management team, I am generally familiar with the Debtors' business, financial condition, policies and procedures, day-to-day operations, and books and records.

3.      I submit this declaration (this "**Declaration**") in support of the *Debtors' Response to Objection of Tamas Hampel to the Order Confirming the Fifth Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates* (the "**Response**"), filed concurrently herewith, which is incorporated herein by reference.

4.      Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, discussions with the Debtors' advisors, review of the relevant documents, or my opinion based on my experience, knowledge, and information concerning the Debtors' operations and financial condition.  If called to testify, I would testify competently to the facts set forth in this Declaration.

A.      **Background and Sale Process**

5.      Virgin Orbit was founded in 2017 and specialized in providing launch services for small satellites.  On April 4, 2023 (the "**Petition Date**"), having continuously lost money since inception and facing diminishing liquidity, the Debtors commenced the Chapter 11 Cases.  Leading up to the Petition Date, the Debtors conducted a robust marketing process to raise new capital or, alternatively, sell the Debtors' assets.  Unfortunately, the Debtors were unable to procure new financing or a buyer for their assets as part of an out-of-court transaction.  Therefore, the Debtors focused their efforts on two parallel initiatives, with the ultimate objective of efficiently prosecuting the Chapter 11 Cases and minimizing administrative expenses:  (i) pursuing a comprehensive strategy to market and sell their assets through an in-court sale process pursuant to

section 363 of the Bankruptcy Code; and (ii) efficiently prosecuting a chapter 11 plan.  Prior to the

Petition Date, the Debtors terminated the majority of their employees, maintaining only those

needed to assist with the marketing and sale process and to maintain the core knowledge necessary

to restart the business if a buyer was found on a going concern basis.

6.     Following the auction held on May 22, 2023, at which the Debtors sold, subject to

court approval and documentation, the majority of their assets, including machinery and

equipment, inventory, the Debtors' modified Boeing 747 airplane, which was used as a launch

platform, and certain intellectual property (collectively, the "**Sales**"), the Debtors terminated all

but a few employees and ceased all operations other than those necessary to transition the Debtors'

assets to the purchasers.  On May 25, 2023, May 26, 2023, and June 27, 2023, the Court entered

orders approving the Sales of the Debtors' assets [Docket Nos. 364, 365, 378, 379, and 481], and

such Sales closed shortly thereafter.  Despite the Debtors' best efforts, including extensive

prepetition and postpetition marketing processes and extensive engagement with numerous parties

that initially submitted indications of interest, the Debtors were unable to obtain a buyer who was

willing to purchase the Debtors' assets as a going concern.  In addition, following the conclusion

of the auction for the Debtors' assets, the Debtors received only a few inconsiderable indications

of interest (one of which was styled as a bid for $1,000) related to the Debtors' remaining

intellectual property assets.

**B.     Solicitation and Confirmation of the Plan**

7.     After the Sales closed, the Debtors quickly focused on formulating a path forward

to efficiently conclude the Chapter 11 Cases.  To this end, the Debtors filed initial versions of the

Plan and Disclosure Statement and began negotiating with various stakeholders.  *See* Docket Nos.

96, 97, 410, 462, 435, 429 & 440.  Ultimately, the Debtors and their major stakeholders agreed on

the terms of a consensual chapter 11 plan, which the Debtors finalized and filed on the docket of

31179507.2

the Chapter 11 Cases.  On June 20, 2023, the Court entered the *Order (A) Approving the Disclosure Statement; (B) Establishing the Voting Record Date, Voting Deadline, and Other Deadlines; (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan; (D) Approving the Manner and Forms of Notice and Other Related Documents; and (E) Granting Related Relief* [Docket No. 462] (the "**Solicitation Procedures Order**").  In compliance with the Solicitation Procedures Order, the Debtors distributed the Disclosure Statement to Holders of Claims entitled to vote on the Plan.  In addition, the Court scheduled the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**").  The Debtors provided notice of the Confirmation Hearing in accordance with the Solicitation Procedures Order, including by publishing notice of the Confirmation Hearing in the *New York Times* and the *Los Angeles Times*.  *See* Docket No. 485.

8.      Ultimately, the proceeds from the sales of the Debtors' assets were insufficient to satisfy the Debtors' substantial secured debt obligations.  *See* Disclosure Statement at 11. Therefore, consistent with sections 1129(b)(2) and 1126(g) of the Bankruptcy Code, Holders of Interests in the Debtors were not entitled to receive any distributions under the Plan, and were therefore deemed to reject the Plan.  *See* 11 U.S.C. § 1129(b)(2) (requiring that creditors be paid in full before equityholders are entitled to receive or retain property under a plan) and 11 U.S.C. § 1126(g) (providing that a class of claims or interests that does not receive or retain property under a plan is deemed to reject such plan).

9.      Only three Classes of Claims (Prepetition Secured Notes Claims, General Unsecured Claims, and Convenience Claims) were impaired and entitled to receive or retain property under the Plan, and were therefore entitled to vote on the Plan.  Plan at 23.  The Debtors received votes from Holders of Claims in Class 4 (General Unsecured Claims) and Class 5

(Convenience Claims), and those Classes of Claims overwhelmingly voted to accept the Plan.  *See* Docket No. 572.

10.     On July 28, 2023, the Court held a hearing to consider confirmation of the Plan. After providing parties in interest an opportunity to be heard, the Court enter the Confirmation Order.  *See* Docket Nos. 466 & 604.  The effective date of the Plan occurred on August 2, 2023. *See* Docket No. 610.

### C.     Events Following the Effective Date of the Plan

11.     Under the Plan, I was appointed as plan administrator to wind down the Debtors' affairs, liquidate certain of the Debtors' remaining assets, reconcile claims (other than General Unsecured Claims), and make distributions to certain creditors.  To date, the Debtors, through the Plan Administrator and counsel, have liquidated the remainder of the Debtors' assets, filed six (6) omnibus objections to certain secured, priority, and administrative claims, and all but a handful of the secured, priority, and administrative claims asserted in the Chapter 11 Cases have been reconciled and paid.  I, along with my team at Alvarez & Marsal, are continuing to wind up the Debtors' affairs, including coordinating the filing of final tax returns.  The Litigation Trustee for the Litigation Trust continues to review and reconcile General Unsecured Claims filed in the Chapter 11 Cases.  In addition, in accordance with the Plan, all rights to IP Assets have been transferred to the Prepetition Secured Noteholder or its designee.

12.     I have read the Motion and am not aware of any materially false or misleading statements made by the Debtors to induce the Court to enter the Confirmation Order.

Dated:  January 23, 2024

/s/ Brian Whittman
Managing Director
Alvarez & Marsal North America, LLC

31179507.2

5